IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA *EX REL.*      )
MICHAEL RAY PERRY,                      )
                                        )    Case No. 08-6307-HO
                    Plaintiff,          )
                                        )        ORDER
        vs.                             )
                                        )
HOOKER CREEK ASPHALT & PAVING, LLC,     )
OREGON MAINLINE PAVING, LLC, WILDISH    )
STANDARD PAVING CO.; HAMILTON           )
CONSTRUCTION CO., J.C. COMPTON          )
CONTRACTOR, INC., HAP TAYLOR & SONS,    )
INC., KNIFE RIVER CORP., and CENTRAL    )
OREGON REDI-MIX, LLC.,                  )
                                        )
                    Defendants.         )
_____ )

In this *qui tam* action brought by relator Michael Perry for

defendants' alleged violations of the United States False Claims

Act, Perry alleges that defendants presented or caused the

presentation of false claims to the United States in connection

ORDER - page 1

with certain federal transportation contracts for the construction
and maintenance of Interstates, U.S. Routes, and Oregon Routes
within the state of Oregon.   In essence, relator alleges that
defendants failed to conduct appropriate tests on appropriate
materials, failed to report inadequate results, doctored test
results, failed to rework sections of failing material, allowed
substandard materials to be used, falsely and fraudulently induced
contract change orders to coverup failing materials, and failed to
use accurately calibrated equipment to achieve accurate test
results. The United States has declined to elect to intervene in
this case.

Defendants Wildish Standard Paving Company and Hamilton
Construction Company each move to dismiss or, in the alternative,
for a more definite statement.   In addition, defendants Hooker
Creek Asphalt Paving, LLC, J.C. Compton Contractor, Inc., Oregon
Mainline Paving, LLC, and Hap Taylor and Sons, Inc. collectively
move to dismiss or for a more definite statement.

## ALLEGATIONS

Under the Federal Aid Highway Program, work on highway
constructions projects is performed by contractors who submit bills
to the state and the state submits vouchers to the Federal Highway
Administration for reimbursement of eligible costs.    Federal
regulations prescribe guidelines to assure the quality of materials

and construction in all projects under the Federal Aid Highway Program including verification sampling and testing as well as independent assurance of testing equipment and personnel.

The Oregon Department of Transportation administers a system for monitoring and verifying contractors' efforts at quality control, but private contractors are ultimately responsible for quality control. Specifically, contractors are

required to employ well-trained certified technicians to perform field-testing of materials for quality control, including certified technicians for aggregate, asphalt, embankment and base, density, mix design, concrete control, concrete strength testing, and quality control. To validate compliance with the specifications, technicians are required to have plans and specifications on site, inspect materials, conduct required sampling tests, monitor activities and performance, perform analysis and make or recommend changes or adjustments, verify the accuracy of materials data, and submit written reports. Contractor quality control technicians must notify the contractor and the Engineer immediately when materials are not compliant with specifications.

Amended Complaint (#75) at ¶ 29.

Contractors receive incentives when test results come within specification and price reductions and/or remediation costs when they do not.

The Oregon Department of Transportation employed relator Perry in Region 4, Bend, Oregon, from 1983 until January 2008, when his employment was terminated by ODOT. From May 1999 until his termination, relator held the position of assistant quality assurance coordinator with responsibility to test construction

ORDER - page 3

materials and evaluate tests for compliance with specifications, as well as calibrate laboratory and field testing equipment and review contractor quality control programs.    During this time period, relator allegedly observed false statements and fraudulent conduct by  contractor  defendants  with  respect  to  quality  control obligations.

Specifically:

on  the  South  Bend  Weigh  &  Safety  Station  project (Contract No. 12876), Hooker Creek Asphalt and Paving submitted  bills  for  highway  construction  work  and materials in violation of specifications for QA Program (Base Aggregate, Subbase, and Shoulders) and Shaping and Compacting. After failing a verification test, defendant knowingly  failed  to  identify  the  failing  areas  as required.  Instead, defendant re-rolled just the failed test  spot  (approx.  5' x  5'),  and  requested  another verification test from QA. Subsequent testing showed that the verification failed. Defendant knowingly failed to identify the entire failing area and rework it until it met specifications. Upon learning the verification was discovered by relator, who had refused to test the mocked-up location, Hooker Creek arranged for relator's removal from the project so he could not attempt to verify further work.

. . . .

On the same project, Hooker Creek similarly billed for work  and  materials  in  violation  of  specifications requiring Continuously Reinforced Concrete Pavement. Hooker Creek's first trucks to arrive on the project did not have appropriate aggregate and did not meet fracture specifications. Hooker Creek's QCT knowingly failed to reject the loads, incorporating them into the project. On information and belief, Hooker Creek on the same project also  failed  to  test  earthwork  according  to  quantity requirements.

Amended Complaint (#75) at ¶¶ 51-52.

ORDER - page 4

Defendant Hooker Creek allegedly committed similar quality control violations on the US 26: Badger Creek-Sidwalter Rd. project (Contract No. 12924), on the O'Neil Highway project (Contract No. 12925), on the Willowdale-Antelope project (Contract No. 12994), on the US 26: Laughlin Road to Marks Creek project (Contract No. 13137), on the Bend-Sisters Preservation project (Contract No. 13151), on the OR 58: US 97 Overcrossing (Contract No. 13311), and on the US 97: China Hat Rd.-Baker Rd./Lava Butte project (Contract No. 13334). Amended Complaint (#75) at ¶¶ 53-59.

Defendant Oregon Mainline Paving,

on the Redmond Reroute, Unit 1, Phase 2 project (Contract No. 13302), ... knowingly violated standards and specifications for Earthwork, Base Aggregate, Compaction Requirements, Concrete Bridges Batching Tolerances, and Limits of Mixture. Defendant submitted more than 60 Quality Control tests on earthwork falsely showing passing testing results. Defendant knowingly failed to achieve compaction before adding subsequent lifts. Defendant, with knowledge of failed verifications, continued to build embankment fills and submitted false statements to the ODOT Project Manager claiming that material was not testable.

. . . .

In this same example, Oregon Mainline Paving obtained documents from the test instrument manufacturer to support its claim that the equipment was not suitable for testing the type of materials on the project. In order to obtain these documents, defendant misrepresented to the test instrument manufacturer the type of material to be tested. The actual test data from both QC and QA verifies the material was in fact testable under both ODOT standards and the manufacturer's specifications for the testing instrument. On the basis of defendant's false statements and fraudulent conduct, it received a Contract Change Order (CCO) which altered testing requirements on

ORDER - page 5

fill material and set up specific guidelines for which
materials fell under the new guidelines. Even after the
CCO was obtained, defendant knowingly failed to follow
CCO guidelines.

Amended Complaint (#75) at ¶¶ 60-61.

Defendant Wildish Standard Paving,

on the Mt. Hood-Chemult project (Contract No. 12990), ...
submitted bills for work in violation of specifications
for Concrete Bridges-Batching Tolerances. On the same
project, defendant's work and materials violated
specifications for Aggregate Subbase, Base and
Shoulders-Shaping and Compacting and the QA Program
requirements for Base Aggregate, by ignoring failing
compaction tests. Despite such failed test results, this
defendant knowingly paved over the top of the failed
material. Defendant also violated specifications for HMAC
Production, falsely submitting tests reflecting passing
volumetrics, while verification tests failed. On this
same project, defendant knowingly violated requirements
for HMACSeason and Temperature Limitations by paving
outside of specified limits.

Defendant Wildish Standard Paving allegedly committed similar

quality control violations on the OR 66: Klamath River - Spencer

Bridge project (Contract No. 13156). Amended Complaint (#75) at ¶¶

62-63.

Defendant Hamilton Construction,

on the US 97: Nevada Ave. to Green Springs Dr. project
(Contract No. 13040), ... billed for materials in
violation of specifications for the QA Program for
Earthwork. Hamilton selectively scheduled verification
tests to be performed only in areas not representative of
the entire project area. Hamilton was required to have
its earthwork verified during construction, but it
completed construction - rocking and paving - and only
then requested QA to perform verifications. Because
earthwork cannot be verified once it is covered up by
pavement, defendant arranged for tests outside of normal
roadways (drainage pond and decorative backfill under
bridges), which consisted of large cobbles. Because the

ORDER - page 6

testing areas were not representative of the actual roadway prism, no true verifications were performed.

. . .

On the same project, Hamilton billed for work and materials in violation of specifications for Concrete Bridges – Batching Tolerances. In addition, four months after concrete was placed and failed verification, a CCO was written to lower the compressive strength of the concrete, therefore accepting a failing product. Said CCO was obtained on the basis of false statements and certifications, and Hamilton received no reduction in its billing for the provision of non-compliant materials.

Amended Complaint (#75) at ¶ 64-65.

Defendant J.C. Compton Contractors,

on the Biggs-Wasco & Grass Valley project (Contract No. 12907), knowingly and falsely billed for contract performance and materials in violation of specifications for Earthwork, when it failed to perform required tests to cover the quantity of materials and misrepresented the· actual materials used. Defendant also knowingly violated specifications for HMAC Production, using a false record of passing results when three of four verifications failed.

Defendant J.C. Compton allegedly committed similar violations on the

Cotton Wood-Freemont project (Contract No.12985). Amended Complaint

(#75) at ¶¶ 66-67.

Defendant Hap Taylor,

on the Grandview Dr.-Nels Anderson Place (Contract No. 12884), ... knowingly submitted bills in violation of specifications with respect to HMAC-Compactors. To falsely report it had achieved the required compaction, defendant used rollers that were smaller than specifications allowed. This method took less compactive effort (weight) to achieve compaction, with the mix compacted too easily. Defendant knew that it had problems with the volumetric properties of the HMAC, and yet falsely and fraudulently failed to report it.

ORDER - page 7

Defendant Hap Taylor allegedly committed similar violations on the US 97: Riley Bridge Bend project (Contract No. 10679), on the Or 16: Glacier-Highland Couplet project (Contract No. 13072), on the US 97/26 Willow Creek-Depoe Rd. project (Contract No. 13077), on the US 97: Redmond Reroute, Phase 1, Unit 1B (Contract No. 13165), on the OR 31: Silver Creek Bridge project (Contract No. 13185), and on the US 97 @ S. Century Drive, Sunriver project (Contract No. 13189), on the OR 126: Prineville Crooked River Bridge (Contract No. 02761). Amended Complaint at ¶¶ 68-74.

The list of projects in which defendants allegedly made false and fraudulent claims includes many other projects listed and not listed in the complaint. As a result of the false statements and failure to comply with quality control requirements, defendants allegedly unfairly reduced their costs and increased their profits. Had the federal government known about the false statements and fraudulent conduct, it would not have paid hundreds of millions of dollars in federal highway funds to defendants.

## DISCUSSION

Relator alleges defendants conduct violated the False Claims Act, 31 U.S.C. § 3729(a)(1). Relator also alleges that defendants conspired to violate the False Claims Act.

In alleging claims of fraud, Fed. R. Civ. P. 9(b) requires relator to allege the circumstances constituting fraud with

ORDER - page 8

particularity including the who, what, when, where, and how in addition to what is false or misleading about a statement and why. Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 999 (9th Cir. 2010). Unlike the securities fraud context, the particularity requirement is not relaxed for claims arising under the False Claims Act because the False Claims Act is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government. Id.

Plaintiff alleges violations of 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), and (a)(1)(c). Although Congress amended the False Claims Act in 2009, the prior version controls here. See 123 Stat 1617, 1625:

> The amendments made by this section shall take effect on the date of enactment of this Act [May 20, 2009] and shall apply to conduct on or after the date of enactment, except that-- (1) subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date.

See also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1057, 1051 n.1 (9th Cir. 2011) citing Hopper v. Solvay Pharmaceuticals, Inc., 588 F.3d 1318, 1327 n.3 (11th Cir. 2009) in which the Eleventh Circuit noted:

> In May 2009, Congress enacted the Fraud Enforcement and Recovery Act, which amended 31 U.S.C. § 3729(a)(2) (2003), replacing the words "to get a false or fraudulent claim paid or approved by the government" with the words "material to a false or fraudulent claim." Pub.L. No. 111-21, § 4, 123 Stat. 1617, 1621. Section 4(f)(1) of the Act provides that this change "shall take effect as if

enacted on June 7, 2008, and apply to all claims ... that
are pending on or after that date." Id. § 4(f)(1), 123
Stat. at 1625 (emphasis added). We interpret the word
"claim" in section 4(f) to mean "any request or demand ...
for money or property," as defined by 31 U.S.C. §
3729(b)(2)(A) (as amended May 2009). While this case was
pending on and after June 7, 2008, the relators do not
allege that any claims, as defined by § 3729(b)(2)(A), were
pending on or after June 7, 2008. Therefore, we conclude
the Fraud Enforcement and Recovery Act does not apply
retroactively to this case. See United States v. Sci.
Applications Int'l Corp., No. 04-1543, 2009 WL 2929250, at
*13-14 (D.D.C. Sept. 14, 2009) (concluding Fraud
Enforcement and Recovery Act not retroactive because no
claims were pending on or after June 7, 2008).

Relator does not allege any claims for payment were pending on June

7, 2008, and likely cannot so allege given that that date is six

months after his termination from the Oregon Department of

Transportation. Accordingly, relators claims relate roughly to the

presentment provision, the false records provision, and the

conspiracy provision of 31 U.S.C. § 3729(a)(1-3) of 2006.

The 2006 version of 31 U.S.C. § 3729(a) provides, in part,

Any person who—

(1) knowingly presents, or causes to be presented, to an
officer or employee of the United States Government or a
member of the Armed Forces of the United States a false or
fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used,
a false record or statement to get a false or fraudulent
claim paid or approved by the Government; [or]

(3) conspires to defraud the Government by getting a false
or fraudulent claim allowed or paid;

Defendants contend that the amended complaint is deficient as

to each claim specifically and in general for lack of plausibility

and particularity.    In addition, defendants contend that the complaint also fails to properly allege subject matter jurisdiction or that the alleged conduct occurred within the statute of limitations.

## A.    Subject Matter Jurisdiction

Fed. R. Civ. P 8(a) requires a short and plain statement of the grounds for jurisdiction.  The applicable version of the False Claims Act provides that

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government ...  Accounting  Office  report,  hearing,  audit,  or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> ...For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(A) and (B) (2006).

Relator alleges that there has been no public disclosure and that he is an original source.    Relator has not pleaded whether he first provided the information to the government which is required to demonstrate that he qualifies a public source, but he has also alleged that there has been no public disclosure.   This would be sufficient to meet the jurisdictional requirement of the False Claims Act, however, relator also alleges the original source exception

ORDER - page 11

which implies that there has in fact been a public disclosure at least by him. Indeed, relator specifically alleges that he "voluntarily provided ... information to the Oregon Secretary of State's Office, to the Federal Bureau of Investigation and the Office of the Attorney General of the United States." Amended Complaint (#75) at ¶ 44. Accordingly, the complaint is deficient with regard to allegations of subject matter jurisdiction because it must include additional detail regarding the original source assertion. The issue needs to be pleaded because if there has been a public disclosure, timing and the content of the alleged disclosure by relator will be significant.[1] The motion to dismiss is granted, without prejudice to amend, on this basis.

## B.  Fraud Allegations

Relator specifically alleges the noted projects on which defendants made fraudulent claims for Federal Aid Highway Program funds are examples only and are not intended to include all of the contracts during the liability period in which defendants engaged in fraudulent activity. Amended Complaint (#75) at ¶ 76. The elements under any of the claims under 31 U.S.C. § 3729(a) noted above are:

> (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the

---

[1]Relator also contends that he did not learn of the fraud through any public disclosure, but how he learned of the fraud is irrelevant as to the public disclosure element of jurisdiction. Moreover, if relator himself made a public disclosure, then he must demonstrate that he is the original source.

government to pay out money or forfeit moneys due. The
question remaining is whether relators in this case have
alleged facts satisfying all four of these elements.

U.S. ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1174
(9th Cir. 2006).

Relator alleges that there are precise contract documents such
as the "Brown Book" and the "Wine Book" requiring specific quality
materials, quality control tests, and use of appropriate devices,
etc.    Relator further alleges that during his employment he
personally observed and documented fraudulent conduct by defendants
with respect to quality control obligations.    However, the
allegations regarding the fraudulent conduct is woefully lacking in
detail.   Relator generally alleges that defendants submitted bills
for highway construction work and materials in violation of
specifications for quality assurance.    However, relator fails to
allege who committed the alleged misconduct (other then the defendant
companies generally), what invoices contained false statements or
even the specific false statements themselves.    There are no
allegations of when the allegedly deficient work was done (or not
done), or when false records or statements were made.   Other than a
general location for the contract itself, relator fails to allege
where the specific defective construction took place.    Indeed,
relator alleges that he does not have access to records underlying
defendants billings for work performed.

Lack of knowledge of the billings is not grounds for relieving
relator from Rule 9's particularity requirement.   See Ebeid ex rel

United States, 616 F.3d at 999 (it is not appropriate to jettison the particularity requirement simply because it would facilitate a claim by an outsider especially because the False Claims Act is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government). In addition, even under circumstances of cookie cutter fraud, a relator may be able to avoid pleading all facts supporting each and every instance of fraudulent billing, Rule 9 still requires a relator to plead the fraud with some level of specificity. Id.

In this case, the allegations go beyond cookie cutter fraud that merely asserts repeated substantially similar fraudulent billing practices. The amended complaint suggests a wide variety of misrepresentations and fraudulent conduct regarding quality control and to simply allege vague "examples" is insufficient to apprise defendants of the particular conduct constituting fraud to permit a defense. The motion to dismiss is granted because the complaint utterly fails to state with particularity the circumstances constituting fraud including the who, what, when, where, and how of the misconduct. See Id. at 998. Defendants are not only left in the dark regarding what specific conduct allegedly constitutes fraud, but also cannot determine if specific tests, etc, that may have been non-conforming with various quality control standards were nonetheless non-fraudulent because of, for instance, a change order or reduced payments. This is precisely why the federal rules require particularity.

ORDER - page 14

In addition, the amended complaint fails to properly allege a presentment claim under the 2006 version of 31 U.S.C. § 3729(a)(1). Relator alleges that defendants submitted bills to the state. Section 3729(a)(1) requires relator to allege that a defendants presented a false or fraudulent claim to the federal government. Allison Engine Co., Inc. v. U.S. ex rel. Sanders, 553 U.S. 662, 671 (2008). Relator argues that defendants submitted the bills to the Oregon Department of Transportation intending to cause it to submit vouchers to the Federal Highway Administration for reimbursement. However, the state is the grantee of funds in such a case, not defendants. Defendants did not submit a request for approval of payment to the federal government. Therefore, relator's section 3729(a)(1) presentment claim fails to allege a claim for relief. See U.S. ex rel. Totten v. Bombardier Corp., 380 F.3d 488, 492 (D.C.Cir. 2004):

> Totten, now with the support of the Government, advances an alternative argument: that a claim submitted to Amtrak is effectively a claim presented to the Government. Thus Totten asserts that "the [False Claims Act] covers claims presented to grantees," ... and relies on dicta from United States ex rel. Yesudian v. Howard University, 153 F.3d 731, 738 (D.C.Cir. 1998), which suggest that claims presented to grantees may be considered "'effectively' presented to the United States" if the claims are paid with funds the grantee received from the Government....

> [Such] reading of the statute would "write the clear unambiguous language of Section 3729(a)(1) entirely out of the Act." ... Liability under Section 3729(a)(1) arises when any person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or

ORDER - page 15

approval," 31 U.S.C. § 3729(a)(1) (emphasis added); Totten
and the Government offer no plausible explanation for how
presentment of a claim to Amtrak can satisfy the clear
textual requirement that a claim be presented to a federal
officer or employee.

Although funds the state paid to defendants may have come from
funds reimbursed by the federal government to the state, a violation
of the False Claims Act cannot be made under the facts alleged. Id.
at 494 (rejecting that it is also possible to read the language to
cover claims presented to grantees, but effectively presented to the
United States because the payment comes out of funds the federal
government gave the grantee.). Given that the 2009 amendments were
specifically aimed at rectifying this situation, relator's apparent
argument that reimbursement provided to the grantee state after
paying the defendants should be viewed as within the subject language
is rejected and the presentment claim is dismissed. Realtor may have
leave to amend this claim only he can reasonably allege that
defendants presented claims for payment to the federal government.

Defendants next argue that relator fails to allege the specific
intent required for a false records claim under the former 31 U.S.C.
§ 3729(a)(2).

What § 3729(a)(2) demands is not proof that the defendant
caused a false record or statement to be presented or
submitted to the Government but that the defendant made a
false record or statement for the purpose of getting "a
false or fraudulent claim paid or approved by the
Government." Therefore, a subcontractor violates §
3729(a)(2) if the subcontractor submits a false statement
to the prime contractor intending for the statement to be
used by the prime contractor to get the Government to pay
its claim .... If a ... defendant makes a false statement

ORDER - page 16

to a private entity and does not intend the Government to
rely on that false statement as a condition of payment, the
statement is not made with the purpose of inducing payment
of a false claim "by the Government." In such a situation,
the direct link between the false statement and the
Government's decision to pay or approve a false claim is
too attenuated to establish liability. Recognizing a cause
of action under the FCA for fraud directed at private
entities would threaten to transform the FCA into an
all-purpose antifraud statute.

Allison Engine Co., Inc., 553 U.S. at 671.

Because relator does not provide specific allegations regarding
the alleged fraudulent billings or even what the specific false
statements in those billings are, it cannot be determined if
defendants intended the federal government to rely on any of the
statements.   There are insufficient allegations of what statements
were made to the state and what statements the state passed on to the
federal government.    In addition, "getting a false or fraudulent
claim 'paid ... by the Government' is not the same as getting a false
or fraudulent claim paid using 'government funds.' ...Under §
3729(a)(2), a defendant must intend that the Government itself pay
the claim."  Id. at 669.  Because the complaint explicitly alleges
that the state paid defendants and that the government reimbursed the
state, it is unclear if defendants could amend this claim to properly
allege a violation.

As to the conspiracy claim, relator concedes the claim under
former 31 U.S.C. § 3729(a)(3) and that claim is dismissed without
prejudice.

Relator also alleges that defendants knowingly made false

ORDER - page 17

certifications of compliance with regulations and laws that were a precondition of payment in violation of 31 U.S.C. § 3729(a). A false certification claim still requires: (1) a false statement or fraudulent course of conduct; (2) made with scienter; (3) that was material; causing (4) the government to pay out money or forfeit moneys due. U.S. ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006). For a certification claim, non-compliance alone is insufficient, rather, certification must be a prerequisite to obtaining government benefits. U.S. ex rel. Hopper v. Anton, 91 F3d. 1261, 1266-67 (9th Cir. 1996). The complaint alleges that defendants must, as a condition of receiving payment, adhere to contract obligations set forth in contract documents and that the Oregon Department of Transportation administers the system pursuant to federal obligations and that the state sets the standards and specifications. Amended Complaint (#75) at ¶¶ 26-28. The complaint is devoid of allegations regarding the federal regulations and laws defendants must have certified compliance with in order to be paid.

A certification claim can be implied, however. But, the implied false certification theory shares common limitations with the express false certification theory. Express certification, as noted, means that the defendants seeking payment certify compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted. Implied false certification occurs when

ORDER - page 18

defendants have previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim. Under both theories, the false certification of compliance creates liability when certification is a prerequisite to obtaining a government benefit. Ebeid, 616 F.3d at 998. Materiality is satisfied under both theories only where compliance is "a sine qua non of receipt of state funding." Id. This claim should is dismissed as inadequately pled for this reason as well as insufficient allegations regarding scienter and materiality given that the alleged fraudulent statements themselves have only been vaguely stated.

Given the limited allegations of fraud, the motions to dismiss are granted.[2] Because this is a complex case relator will be allowed to amend if he has any further knowledge of the circumstances of the alleged fraudulent activity. Accordingly, the motions for a more definite statement are granted as well.

The amended complaint should include the "who, what, when, where, and how" to support each element of the alleged False Claims Act violations with regard to each false claim supposedly made by

---

[2]The lack of specificity also makes it impossible to determine if there is a statute of limitations defense given the lack of dates for the alleged fraudulent conduct. The limitations period for the False Claims Act is generally six years and can be extended to ten, but still must be brought within three years of obtaining relevant information.

each defendant as well as the conduct alleged to be fraudulent.   In addition, the amended complaint should include specific facts regarding the intention of defendants in making alleged false statements as well as the materiality of the false statements or conduct.   Finally, the amended complaint should include specific facts regarding the request for payment and to whom such requests were made.

## CONCLUSION

For the reasons stated above, the motions to dismiss and motions for a more definite statement are granted (#s 89, 91 and 93). Relator shall have thirty days to file an amended complaint curing the deficiencies noted above.

DATED this   13½ day of December, 2011.

United States District Judge

ORDER - page 20