IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THE UNITED STATES OF AMERICA, ex rel., MICHAEL RAY PERRY,

    Plaintiffs,

v.

HOOKER CREEK ASPHALT & PAVING, LLC, et al.,

    Defendants.

Case. No. 6:08-cv-6307-MC

OPINION AND ORDER

Nearly ten years ago, relator Michael Ray Perry filed this complaint alleging defendants violated the False Claims Act, 31 U.S.C. § 3729, by conspiring to defraud the United States over many years in the construction of road projects. Judge Michael Hogan twice pointed out the deficiencies in Perry's complaint. A Ninth Circuit panel unanimously agreed Perry's complaint lacked the requisite particularity needed to support a fraud claim but, over a dissenting opinion, concluded Judge Hogan should have granted Perry leave to amend as the allegations "could potentially provide sufficient particularity to satisfy Rule 9(b)." *United States ex rel. Perry v. Hooker Creek Asphalt and Paving, LLC*, 565 Fed.Appx. 669, 670 (9th Cir. 2014). Defendants now move to dismiss Perry's fourth attempt at providing sufficient facts to support his fraud

claims. Because Perry's complaint still fails to state a claim under the False Claims Act, this action is dismissed, with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss under rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe them in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

The parties, and now five judges, are quite familiar with Perry's claims. Judge Hogan's previous opinions dismissing the case provide much more detail on both the alleged facts and how Perry's claims are "woefully lacking in detail." *United States ex rel. Perry v. Hooker Creek Asphalt & Paving, LLC*, 2012 WL 913229 at *2 (D. Or. March 16, 2012 Opinion) (quoting December 13, 2011 Opinion)). It is worth noting Judge Callahan's dissenting opinion in which he suggests that the plaintiff's ability to plead a claim is nothing more than aspirational:

> I cannot agree with such speculation. Plaintiff in twice responding to motions to dismiss never asserted individual claims with sufficient specificity. More importantly, the majority does not identify any specific example that actually contains sufficient particularity to support an individual claim. Rather the majority suggests that some unspecified examples "could potentially provide sufficient particularity." *This seems to me to be wishful thinking, particularly because the district court noted, and plaintiff does not really contest, that plaintiff does not have access to the information on billing, the records and practices underlying the defendants' billing for work performed, or "materials provided relating to the road construction in issue."*
>
> Having affirmed the district court's dismissal of the second amended complaint without in any way disagreeing with its reasoning, I cannot conclude that the court abused its discretion in denying leave to amend. Indeed, insisting that plaintiff be granted leave to file a third amended complaint appears to be a futile exercise that unnecessarily burdens the district court and the defendants. Accordingly, I would not have granted the petition for rehearing and I dissent from the order remanding the case to the district court.

565 Fed.Appx. at 671-72 (emphasis added).

I too am cognizant of unduly burdening these parties and their attorneys. For that reason, and because Perry's new complaint does not fix the fatal flaws found in each earlier complaint, I conclude that oral argument in this matter is unnecessary and unduly burdensome.

Over the past 9 years, the parties filed thousands of pages of briefs and exhibits. Despite all those filings, Perry still admits that he "does not have access to the information, records and practices underlying defendants' bills for work performed and materials provided relating to road construction and maintenance contracts at issue in this lawsuit. Such information is in the exclusive possession or control of defendants and/or the United States." Third Am. Compl., ¶ 47. For one bringing a claim under the False Claims Act, this admission presents a problem. *See Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.* 637 F.3d 1047, 1055 (9th Cir. 2011) ("It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim.") (quoting *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 997 (9th Cir. 2002)).

3—Opinion and Order

Judge Hogan's conclusion from over five years ago—a conclusion the Ninth Circuit unanimously affirmed—rings equally true with respect to Perry's now fourth bite at the apple:

> There are no facts concerning the alleged false vouchers and cost schedules caused to be presented to the federal government or when and by whom they were submitted. It is simply not plausible that all defendants submitted falsified billings for all projects for all work for the Oregon Department of Transportation over a ten year period.
>
> Furthermore, because there are insufficient allegations of the billings themselves, the complaint fails to allege with the requisite specificity defendants' intent vis-à-vis the federal government, what information was presented to the federal government (or even the Oregon Department of Transportation for that matter), or what role the information provided in the federal government's decision to pay (or even what if anything the government paid). There are no allegations of facts about what was contained in the claims for payment, whether the claims were paid with or without adjustment, and whether the federal government viewed payment as contingent on the absence of the alleged deficient testing or materials. Mere conclusory allegations that the elements of the statutes in question are met are inadequate to meet the pleading requirements in this case. Accordingly, the complaint is dismissed.

2012 WL 913229 at *4.

Perry argues that because the contracts and bills are in the exclusive possession of the government and/or defendants, the rigorous pleading standards for a False Claim Act should be relaxed and he should be allowed to pursue his theories via discovery. The Ninth Circuit, however, explicitly rejected Perry's argument when it balanced that argument against the purpose of the False Claims Act: to entice insiders to blow the whistle on fraudulent activities at government expense. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) ("To jettison the particularity requirement simply because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule, especially because the FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government."). Perry is not an "insider" within the meaning of the Act. An insider would have at least some knowledge of the actual claims presented for payment.

4—Opinion and Order

According to the complaint, "Project Managers are delegated authority and responsibility to enforce contract provisions." Third Am. Compl., ¶ 33. Perry was not a project manager. Perry was an Assistant Quality Assurance Coordinator (QAC). *Id.* at ¶ 42. Generally, QACs like Perry were responsible for making sure contractors complied with specifications. *Id.* Perry's complaint essentially charges defendants with failing to comply with specifications. As Perry has not seen the contracts or the bills defendants submitted, he merely assumes that defendants violated the False Claims Act.

But "insider" knowledge of the actual claims is critical to any False Claims Act claim. Such knowledge is even more critical when examining the actual contracts at issue here.[1] Section 00150.25 of the 2002 Edition of the Oregon Standard Specifications on Construction states:

> **00150.25 Acceptability of Materials and Work** – The Contractor shall furnish Materials and shall perform Work in Close Conformance to the Plans and Specifications. If the Engineer determines that the Materials furnished or the Work performed are not in Close Conformance with the Plans and Specifications, the Engineer may:
>
> Reject the Materials or Work and order the Contractor, at the Contractor's expense, to remove, replace, or otherwise correct any non-conformity; or
>
> Accept the Materials or Work as suitable for the intended purpose, adjust the amount paid for applicable Pay Items to account for diminished cost to the Contractor or diminished value to the Agency, document the adjustment, and provide written documentation to the Contractor regarding the basis of the adjustment.

Knife River Memo., Ex. 1, 8; ECF No 209-1.

The Project Manager—as noted, Perry was never a Project Manager—"has the authority and responsibility to enforce the provisions of the contract" and ensures that "the Project meets

---

[1] Perry's complaints specifically refer to and rely on the contracts and therefore the Court takes judicial notice of the contracts at issue. *Lee v. County of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Perry also references and relies on the 2002 version of the Oregon Quality Assurance Program Manual and Oregon Standard Specifications on Construction. The Court takes judicial notice of those documents as well.

5—Opinion and Order

the requirements specified in the plans and specifications." *Id.* at Ex. 2, 9. As Perry was not privy to the contracts or submitted claims, he necessarily is in the dark as to whether any payment amounts were adjusted given the alleged failure to comply with specifications. As the False Claims Act requires an actual false claim, any adjustments made for failing to meet specifications—clearly allowable in Oregon—would torpedo Perry's claim. Oblivious to whether any adjustments were made here, Perry simply seeks to fish out these claims through discovery. The pleading requirements, however, are not relaxed merely to allow an "outsider" such as Perry to bring a claim. *Lungwitz*, 616 F.3d at 999.

Likewise, Perry has no knowledge as to whether defendants submitted truthful claims that the government simply paid anyway. Perry simply assumes the worst, alleging a seemingly vast conspiracy, over nearly a decade, between private contractors and ODOT Project Managers over nearly all state highway construction projects. I assume, without deciding, that such a grand scheme could perhaps be possible. But considering Perry lacks knowledge as to a single claim actually submitted, I decline to overlook the "obvious alternative explanations" to Perry's claims. *Cafasso*, 637 F.3d at 1057 ("In light of Cafasso's failure to identify any particular false claims or their attendant circumstances, as well as the 'obvious alternative explanation' that no false claims occurred, we will not draw the unwarranted and implausible inference that discovery will reveal evidence of such false claims.").

Interestingly enough, Perry's complaints actually provide support for the "obvious alternative explanation" that any payments to defendants were simply adjusted downward for any failures to comply with specifications. Defendants provide numerous detailed examples in their thorough briefings. To pick just one of the many examples, defendants point to ¶ 144 of the Third Amended Complaint. There, Perry alleges:

6—Opinion and Order

> This project consisted of building a small bridge in Sliver Lake. By 2006, defendant knew that the work it performed on the project had failures of specifications for earthwork (00330) and concrete bridges (00540). Despite such knowledge, it submitted claims on the subcontract, in an amount to be determined, for such non-conforming work.

Elsewhere, as (again) pointed out by defendants, Perry's own allegations confirm that there in fact was no false claim. Perry alleges, "Although the contract required the addition of fly ash into the concrete mix, defendant produced the concrete without fly ash. After this deficiency had been revealed to ODOT, defendant submitted a new mix design without fly ash." Third Am. Compl., ¶ 153. These are just two of many examples. Already too much time and ink has been spent on this False Claims Act claim brought by a relator who admits having no knowledge, of any kind, regarding any claim actually submitted.

It is clear that Perry is unable to properly plead a False Claims Act claim due to his status as an "outsider" with no access to the claims at issue. After all, "[A]n actual false claim is 'the *sine qua* non of a[n FCA] violation.'" *Cafasso*, 637 F.3d at 1055 (quoting *Aflatooni*, 314 F.3d at 1002). Perry includes no specifics regarding who specifically made the claim, what the claim specifically contained, and why the claim was false. In short, Perry fails to allege not only the who, what, where and when of the fraudulent actions, but he also neglects to allege, in any meaningful way, "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." Id. (quoting *Lungwitz*, 616 F.3d at 998) (alteration in original).

It appears that this scenario, where: (1) a QAC witnessed concerning construction techniques; (2) the QAC reported those concerns to his superiors; and (3) the QAC alleges he was terminated for raising such concerns, is a garden-variety employment retaliation case. But Perry brought those claims in his employment case preceding this action. As a result, Perry is left trying to shoe-horn his claims into the False Claims Act. Considering he lacks any information

on any actual claims submitted, Perry's task is an insurmountable one. As stated above, this action is dismissed, with prejudice.[2]

## **CONCLUSION**

Defendants' motions to dismiss, ECF Nos. 209, 214, and 215, are GRANTED. This action is DISMISSED, with prejudice.

IT IS SO ORDERED.

DATED this 26th day of May, 2017.

       /s/ Michael J. McShane
Michael McShane
United States District Judge

---

[2] Because Perry's lack of direct knowledge regarding the claims is fatal, I need not discuss the multiple other arguments defendants raise on the motions to dismiss. That said, several of those arguments appear to be strong ones.